IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW C. STECHAUNER,

Plaintiff,

v.

MATTHEW BAXTER, KELLEN STURZ,
ERIC NORMAN, SUE BOOKER, MARC OLTRA,
and KEVIN FROST,[1]

Defendants.

OPINION and ORDER

24-cv-111-jdp

---

Plaintiff Matthew C. Stechauner, proceeding without counsel, is currently incarcerated at New Lisbon Correctional Institution. When Stechauner was at Oshkosh Correctional Institution, another inmate sexually assaulted him by patting his buttocks. Stechauner alleges that this was caused by a correctional officer telling the other inmate confidential information that the DOC had assessed Stechauner with a high risk of being sexually victimized by other inmates. Stechauner also alleges that prison officials kept him and the other inmate housed together on the same unit following the assault. I allowed Stechauner to proceed on Eighth Amendment claims about these events.

Both sides move for summary judgment. Because the undisputed facts show that an officer only negligently disclosed the confidential information to other prisoners, and that Stechauner was kept housed separately from his attacker, I will deny Stechauner's motion for summary judgment, grant defendants' motion for summary judgment, and dismiss the case.

---

[1] I have amended the caption to reflect defendants' names as provided in their filings.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Matthew Stechauner was housed at Oshkosh Correctional Institution during the events relevant to this lawsuit. Defendants all worked at Oshkosh Correctional Institution: Matthew Baxter and Kevin Frost were correctional officers, Marc Oltra was a correctional sergeant, and Sue Booker, Eric Norman, and Kellen Sturz were supervising officers.

This case concerns Stechauner's designation as an inmate with a high risk of being sexually abused by other inmates. The DOC designates certain inmates as having a high risk of being sexually abused and others as having a high risk of sexually abusing fellow inmates. These classifications are used to inform staff making housing and bed assignments in an attempt to keep inmates who are at high risk of being sexually victimized separate from those who are at high risk of being sexually abusive. These classifications are confidential information and are not to be shared with the inmates themselves.

On October 7, 2022, defendant Baxter was given instructions to move Stechauner into a different cell with a new cellmate. But in updating the housing assignments on the DOC's computer system, Baxter saw that Stechauner was designated as having a high risk of being sexually abused, and the proposed new cellmate was designated as having a high risk of sexually abusing fellow inmates.

Baxter called Stechauner over to the officer station to tell him that he could not room with the proposed new cellmate. Twice during this conversation, Baxter mentioned Stechauner's designation as an inmate with a high risk of being sexually abused. According to Baxter, one of the times he mentioned this designation, another inmate was present at the officer station; I take him to mean it was the proposed new cellmate. Stechauner says that two

other inmates, including Ryan Hodge, were also "hanging out right by the officer station" and overheard Baxter disclose Stechauner's designation as an inmate with a high risk of being sexually abused. Dkt. 79, ¶ 15. Baxter's supervisors later told Baxter that he should not have disclosed that information.

Stechauner says that this disclosure led to Hodge sexually assaulting him four days later. Video footage of the dayroom shows that on October 11, 2022, at about 3:53 p.m., Stechauner was bending over at a table. Hodge approached Stechauner from behind, patted his buttocks, and walked past him. *See* Dkt. 61-5 (placeholder docket entry for the footage), at 00:11–00:13. Hodge then walked back toward Stechauner while saying something (the footage doesn't include audio); Stechauner kicked at Hodge, and about ten seconds later he walked away from Hodge. *Id.* at 00:14–00:33.

Stechauner says that defendant Oltra witnessed the assault, and that Stechauner told defendants Oltra and Frost about it immediately afterward. Oltra and Frost deny seeing the assault or Stechauner telling them about it.

Defendant Sturz started a Prison Rape Elimination Act (PREA) investigation into the incident at about 5:00 p.m. by interviewing Stechauner. Sturz then viewed the dayroom video footage. Hodge was placed in temporary lockup; Stechauner says that this occurred at 6:50 p.m.

Stechauner and Hodge were then housed in different units until Stechauner was transferred out of Oshkosh Correctional Institution on November 15, 2022, except for a period when both Stechauner and Hodge were housed in the restricted housing unit.

Stechauner says that during the period that he and Hodge were housed in different units, Hodge spoke with him once, to gloat about receiving only 30 days in segregation for the assault.

I will discuss additional facts as they are relevant to the analysis.

## ANALYSIS

I granted Stechauner leave to proceed on the following Eighth Amendment claims:

- Defendant Baxter discussed Stechauner's high risk-of-victimization designation in front of other inmates, leading to his assault.

- Defendants Oltra, Frost, Sturz, Norman, and Booker left Stechauner housed with Hodge after the assault.

### A.  Defendant Baxter

I'll start with Stechauner's claim that defendant Baxter caused the assault to happen because days earlier he disclosed to inmates Stechauner's high risk-of-victimization designation.

There is a preliminary issue regarding this claim that I must address. In his summary judgment briefing, Stechauner contends that DOC officials intentionally destroyed video evidence of Baxter disclosing his designation to other inmates to harm Stechauner's case, and he seeks sanctions against defendants. Dkt. 69, at 3.

A sanction for spoliation may be appropriate when the movant shows both that the opposing party knew or should have known that litigation was imminent and that the party destroyed the evidence in bad faith. *See Fitzpatrick v. Nys*, 861 F. App'x 108, 110 (7th Cir. 2021). Stechauner hasn't made this showing. Stechauner states that he wrote to the security director a day after Baxter's disclosure, but that communication doesn't contain a request to

4

preserve the video. Dkt. 72-2, at 1. In the grievance that he later filed about Baxter's disclosure, he asked the complaint examiner to review footage that he asked the security director to preserve, Dkt. 44-3, at 1, but his supporting documents show that the only footage that he specifically asked the security director to be preserved was the footage of the assault itself (as well as footage from an unrelated June 2022 incident), Dkt. 72-2, at 3–6.

Defendants' briefing focuses on Stechauner's failure to properly request the footage; they don't explain why their own duty to preserve evidence wasn't triggered by Stechauner's letter to the security director or his grievance about the issue (although in their discovery responses they do note that the particular footage would have been recorded over about a week after the incident. Dkt. 47-1, at 6). Regardless, Stechauner provides no evidence suggesting that the destruction of this footage was done in bad faith, so I will deny his motion for sanctions. Stechauner also doesn't suggest how he is prejudiced at the summary judgment stage, because defendants concede that Baxter made this disclosure, and I will accept as true Stechauner's firsthand account regarding the details of the disclosure for purposes of opposing defendants' motion for summary judgment.

Turning to the substance of Stechauner's claim against Baxter, the Eighth Amendment prohibits prison officials from consciously disregarding a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "'Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners.'" *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001)). To maintain an Eighth Amendment failure-to-protect claim, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the

defendant consciously disregarded that risk. *Farmer*, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendants concede that Baxter indeed disclosed Stechauner's high risk-of-victimization designation to at least one other inmate, but they argue that (1) there's no proof that the disclosure caused the assault; and (2) that Baxter's disclosure was only negligent, which doesn't violate the Eighth Amendment.

I disagree with defendants on the first point. Stechauner doesn't explain precisely how close Hodge was to Baxter and Stechauner as Baxter disclosed his high risk-of-victimization designation, but a jury could reasonably infer that Hodge was within earshot and heard that disclosure. Given that Hodge assaulted Stechauner only days later, a reasonable jury could also infer that Hodge was motivated to do so at least in part by his knowledge of Stechauner's high risk-of-victimization designation; presumably this information is ordinarily kept confidential in part to avoid inviting assaults upon inmates deemed vulnerable.

However, I agree with defendants on the second point. In granting Stechauner leave to proceed on his claim against Baxter, I stated that Stechauner "alleges that defendant Baxter did more than ignore a risk of harm; he knowingly introduced it by discussing Stechauner's victimization-risk designation in front of other inmates, one of whom then slapped Stechauner's buttocks." Dkt. 26, at 4. But the parties' summary judgment materials give more context to Baxter's disclosure. It is undisputed that Baxter disclosed that information as part of his explanation to Stechauner and another inmate for refusing to house them together because the other inmate was deemed a high risk to assault others. That is, Stechauner's desire to *avoid* a risk of victimization led to Baxter's disclosure of confidential information. There's

6

no indication that Baxter directly told Hodge this information for the purposes of embarrassing Stechauner or putting him in danger; rather Hodge overheard it as Baxter was explaining his decision to Stechauner and another inmate. So while Baxter disclosing this information where other inmates could hear him violated DOC policies and was clearly ill-advised, a reasonable jury could conclude only that Baxter was negligent in doing so. Negligence isn't enough to violate the Eighth Amendment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense" (internal quotation omitted)). Therefore, I will deny Stechauner's motion for summary judgment and I will grant defendants' motion for summary judgment on this claim.

## B.  Other defendants

Stechauner contends that defendants Oltra, Frost, Sturz, Norman, and Booker left Stechauner housed with Hodge after the assault. There are two aspects to these claims: (1) Oltra and Frost waited at least an hour to report Hodge's sexual assault of Stechauner; and (2) Sturz, Norman, and Booker kept Stechauner housed in the same unit as Hodge even after an investigation was started.

The parties dispute whether Oltra and Frost witnessed the assault firsthand and when whether Stechauner alerted them of the assault later that day. But for purposes of opposing defendants' summary judgment motion I will credit Stechauner's account; he states that Oltra saw the assault as it happened and he quickly told Oltra and Frost about it, but Sturz's PREA investigation wasn't started for an hour. Nobody separated Stechauner and Hodge until about three hours after the incident, when Hodge was sent to temporary lockup.

Stechauner contends that PREA policies required he and Hodge to be separated and an investigation to be commenced immediately. But the mere fact that an internal prison policy was violated doesn't itself prove a constitutional violation. *See Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). Rather, Stechauner must show that Oltra and Frost disregarded a risk of harm and that he was injured by that disregard. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). This is where Stechauner's claims against Oltra and Frost fail: he provides no evidence that he was harmed by this one-hour delay in initiating the investigation or the longer delay in separating him from Hodge. So I will deny his motion for summary judgment and I will grant defendants' motion for summary judgment on these claims.

That leaves Stechauner's claims against Sturz, Norman, and Booker for keeping Stechauner in the same unit as Hodge even after an investigation was started. The undisputed facts contradict Stechauner's allegations. DOC housing records show that Hodge was sent to temporary lockup in the restricted housing unit after Sturz started his investigation. Then Stechauner and Hodge were housed in separate units for the remainder of Stechauner's time at the prison, with one exception: there was a portion of time that they were both placed in the restricted housing unit. But it is undisputed that inmates in that solitary-confinement unit cannot contact each other. So counter to Stechauner's allegations, prison officials addressed the risk of harm by keeping them separated.

It is also undisputed that despite these placements, Hodge made contact with Stechauner once after their separation: on November 12, 2022, Stechauner reported that Hodge approached him "outside in front of [Stechauner's] unit" and told him that "he got away with slapping [Stechauner] on [his] ass and he only got 30 days in segregation for sexually assaulting [Stechauner]." Dkt. 80, ¶ 6. Hodge was immediately placed back in temporary

lockup after Stechauner reported this incident. Defendants state that although inmates may not enter other units, it is possible for inmates housed in different units to walk past another inmate's unit during movements. Stechauner argues that Hodge should not even have been housed in the same prison with him. But as defendants argue, the Eighth Amendment requires prison officials only to "take reasonable measures to guarantee the safety of the inmates." *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002) (internal quotations omitted). From these facts, no reasonable jury could conclude that defendants disregarded the risk of harm to Stechauner based on a single chance encounter despite officials deliberately housing the two inmates in separate units. Therefore I will deny Stechauner's motion for summary judgment and I will grant defendants' motion for summary judgment on these claims. Because none of Stechauner's claims survive summary judgment, this entire case will be dismissed.[2]

## ORDER

IT IS ORDERED that:

1.  The caption is AMENDED as reflected in the caption above.

2.  Plaintiff's motion for spoliation sanctions, Dkt. 69, is DENIED.

3.  Defendants' motion for summary judgment, Dkt. 57, is GRANTED.

4.  Plaintiff's motion for summary judgment, Dkt. 69, is DENIED.

---

[2] Defendants also contend that they are entitled to qualified immunity. Because I am dismissing Stechauner's Eighth Amendment claims on the merits, I need not consider defendants' qualified immunity arguments.

5.  The clerk of court is directed to enter judgment accordingly and close the case.

Entered March 11, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge